**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 6:26-cr-07-KKC-EBA-1** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **DONTE D. HENDRICKS,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter comes before the Court on Defendant Donte D. Hendricks' Motion for Reconsideration (R. 36). Hendricks asks the Court to reconsider its previous Order (R. 31) that denied his Motion to Suppress (R. 26) all evidence seized from his vehicle after a warrantless search.

## I. BACKGROUND

Hendricks does not contest any material facts related to this matter. Instead, he believes the Court erred in its legal analysis. Because the material facts are not in dispute, the Court adopts the facts from its previous Order. (*See* R. 31 at 1–3.)

On February 25, 2025, a confidential informant told Pikeville Police Detective Zachary Bowens that a person under the alias "BGE" was selling large amounts of fentanyl and importing it from West Virginia. (R. 28-1 at 5.) The confidential informant was "tested and credible." (*Id*.) BGE was identified as Hendricks. (*Id*.)

The confidential informant told Detective Bowens that Hendricks planned to transport three ounces of fentanyl to Debra Smith aka "Lynn Ferguson" on February 26, 2025. (*Id*.) The confidential informant provided a description of Hendricks, his car, and his arrival time and location, as well as screenshots of his Facebook page, which included pictures of Hendricks. (*Id*.) The confidential informant described Hendricks as a black male

with a large build and approximately 6'0" tall. According to the confidential informant, Hendricks' car was a dark blue Ford passenger car, and he would be delivering the fentanyl to 601 Ratliff Creek Road. (*Id*.) The confidential informant stated that Hendricks would be the only individual at the residence. (*Id*.) Finally, the confidential informant stated that Hendricks was known to carry a gun and was believed to be dangerous. (*Id*.) Officers were briefed on the situation and were instructed to detain Hendricks. (*Id*.)

At approximately 8:32 PM on February 26, 2025, officers arrived at the scene. (*Id*.) Detective Bowens observed the vehicle described by the confidential informant leaving 601 Ratliff Creek Road. (*Id*.) Specifically, he observed a black 2011 Ford Taurus four-door passenger car. (*Id*. at 6.) The vehicle was registered to Donte Hendricks through West Virginia. (*Id*.)

Because of the car's position on the road, Detective Bowens could see the operator of the car. (*Id*. at 5.) Detective Bowens believed the driver matched the physical description and pictures from the Facebook account provided by the confidential informant. (*Id*.)

Detective Bowens turned on his emergency lights and conducted a stop on the vehicle "based off the probable cause developed from the totality of the circumstances and correlating information provided by the confidential witness." (*Id*.) Because of his concern that Hendricks was carrying a pistol, Detective Bowens conducted a "felony stop" on Hendricks. (*Id*. at 6.)

Detective Bowens drew his service pistol, kept it in a "low ready position," and gave loud verbal instructions for the operator to exit the vehicle through several small movements. (*Id*.) Then, Hendricks was detained and given the *Miranda* warning. (*Id*.) While detained, Hendricks was observed wearing a gold and white chain necklace with the letters "BGE." (*Id*.) Officers contacted K-9 Deputy Allen May with the Floyd County Sheriff for a dog sniff. (*Id*.)

At 8:52 PM, K-9 "Bear" alerted to the odor of a controlled substance near the driver's-side passenger door. (*Id*.) The officers observed a large bag of opened dog food in the backseat. (*Id*.) Officer Patrick Coleman cut the bag of dog food with a knife and observed an off-white bag filled with a powdery substance suspected to be fentanyl. (*Id*.) When K-9 Bear was brought back to the bag, he alerted to the odor of a controlled substance again. (*Id*.)

The officers seized four ounces of fentanyl and located a suspected cutting agent for fentanyl on Hendricks' person. (*Id*.) Additionally, the officers seized Hendricks' car, cell phone, and money uncovered during the search of his vehicle and person. (*Id*.) They did not find any guns. (*Id*.)

Hendricks was subsequently arrested, indicted, and arraigned. (*See* R. 1, 9, 12.) Hendricks filed a Motion to Suppress on October 27, 2025. (R. 26.) The United States filed a Response in Opposition. (R. 28.) On December 19, 2025, the Court filed an Opinion and Order Denying the Motion to Suppress. (R. 31.) During a Motion hearing held on January 8, 2026, the Court permitted the Defendant to file a Motion for Reconsideration, based upon the Defendant's request for reconsideration of the Opinion and Order. (R. 35.)

## II.   LEGAL STANDARD

"[C]ourts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." *United States v. Brown*, No. CR 5:12-79-KKC-4, 2023 WL 418693, at *1 (E.D. Ky. Jan. 26, 2023) (citing *United States v. Guzman*, Criminal Case No. 5:16-CR-41-JMH-EBA, 2019 WL 4418015, at *2 (E.D. Ky. Sept. 16, 2019)). "The standard for a motion to reconsider under Rule 59(e) is 'necessarily high.'" *Id*. (citing *Hewitt v. W. & S. Fin. Grp. Flexibly Benefits Plan*, Civil Action No. 16-120- HRW, 2017 WL 2927472, at *1 (E.D. Ky. July 7, 2017)). "A court may only grant a Rule 59(e) motion if the moving party shows (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling

law; or (4) a manifest injustice. *Id.* (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

## III. ANALYSIS

Hendricks moves this Court to reconsider its previous Order (R. 30) on three different grounds. Hendricks first argues that the Court's previous Order (R. 31) erred in giving undue weight to the confidential informant. (R. 36 at 2–3.) Hendricks also argues that the government used excessive force during the traffic stop in violation of *Terry v. Ohio*, 392 U.S. 1 (1968). (*Id.* at 3.) Finally, Hendricks argues that the 20-minute detention was not legally justified. (R. 36-1 at 16.) The Court will address Hendricks' arguments in turn.

### A. The Court's Prior Order (R. 31) Accorded Proper Weight to the Confidential Informant's Tip.

Hendricks takes issue with the initial traffic stop, as it was based off information from a confidential informant. (R. 36-1 at 9.) Hendricks states that, "this case . . . is governed by the analysis we first applied in *Terry*." (*Id.* at 10.) Within the *Terry* framework, Hendricks believes the Court erred as a matter of law when it found the informant's tip was sufficient to conduct the stop. (*Id.* at 9.)

As an initial matter, Hendricks is correct that the reasonable suspicion standard set forth in *Terry* applies to this encounter. Officers may engage in *Terry* stops if they have a reasonable suspicion that criminal activity may be afoot. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion is based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417-18, (1981). As to what amounts to reasonable suspicion, "[t]he bar is low." *United States v. Williams*, 68 F.4th 304, 308 (6th Cir. 2023). Importantly, *Terry* stops have a "broad scope" encompassing stops of "drivers on the public roads." *United States v. Sheckles*, 996 F.3d 330, 343–344 (6th Cir. 2021).

When an informant's tip contributes to reasonable suspicion, "the weight to which that tip is entitled falls along a broad spectrum." *Williams*, 483 F.App'x at 25. Tips from anonymous informants are generally entitled to little weight, whereas tips from known or reliable informants are generally entitled to more weight. *Id.* "Tips that provide specific details or predictions of future action fall higher on the reliability scale because they suggest the existence of knowledge to which the public might not have access." *Id.*

Hendricks' contention that the officers lacked reasonable suspicion to stop him based off the confidential informant's tip runs contrary to the law. This Court previously found that (1) the stop was made following a tip from a confidential informant who was previously known and reliable; (2) the tip provided specific details about Hendricks and his activities; and (3) the police independently corroborated this information when they saw him driving in his vehicle that matched the description. (R. 31 at 5–6.) Considering the totality of the circumstances, these factors are more than sufficient to meet the low bar of reasonable suspicion. *United States v. Williams*, 68 F.4th 304, 308 (6th Cir. 2023). This Court was therefore correct finding that "Detective Bowens had reasonable suspicion that Hendricks was engaging in drug trafficking to make the stop." (R. 31 at 6.) Because the officers had a reasonable suspicion, the stop was justified.

### B. The Government did not use Excessive Force to Stop Hendricks

Hendricks argues that the officers' conduct went beyond the bounds of a *Terry* stop, which amounted to a formal arrest. (R. 36 at 3.) To this end, he cites two cases: *Delaware v. Prouse*, 440 U.S. 648 (1979) and *Dunaway v. New York*, 442 U.S. 200 (1979). The Court does not find either of these cases applicable to the circumstances here. As the United States properly points out, *Prouse* was a case about law enforcement officers who pulled over vehicles at random, that is, without reasonable suspicion or probable cause to spot check

whether they had license or registration. 440 U.S. at 650. *Prouse* is therefore readily distinguishable from this case.

Similarly, the *Dunaway* case involved completely different circumstances from the ones in this case. In *Dunaway*, law enforcement traveled to a residence, placed an individual in custody, drove him to the police station, and interrogated him with only reasonable suspicion. 442 U.S. at 212. This case does not persuade the court.

As to Hendricks' contention that the "felony stop" constituted excessive force under *Terry*, he fails to cite any authority holding that such stops are unlawful. (R. 36 at 3.) To the contrary, the United States relies on *United States v. Garcia*, 496 F.3d 495, 501 (6th Cir. 2007), which directly undermines Hendricks' argument. In *Garcia*, the Sixth Circuit upheld an investigatory stop conducted as a "felony stop," during which officers drew their weapons and ordered the occupants to exit the vehicle and kneel. (*Id.* at 504.) Necessarily, the legally operative facts are based on the officers' suspicion, not the means or manner in which they conduct the stop. Accordingly, the fact that the officers conducted a "felony stop" with guns drawn is immaterial to the reasonable suspicion analysis. As to this point, the Court did not err in its previous judgment.

Hendricks' argument also relies on a faulty interpretation of *Pennsylvania v. Mimms,* 434 U.S. 106 (1977). He argues that the police are "**only**" authorized to order a person out of their vehicle for a traffic violation. This is incorrect. (R. 36-1 at 13–14; emphasis in original.) So long as police have reasonable suspicion that crime is afoot, they can conduct a stop. *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30). Because the Court properly determined that the officers had reasonable suspicion of Hendricks' involvement in illicit drug activity, stopping his vehicle on that basis was proper. *See Kansas v. Glover,* 589 U.S.

376, 380 (2020). All-in-all, the police officers had reasonable suspicion. Their reliance on the confidential informant, and their decision to conduct a felony stop were legally justified.

### C. Hendricks' 20-Minute Detention was Legal

Hendricks also takes issue with the 20-minute timeframe in which officers detained him while they waited for the K-9 unit to arrive. Hendricks argues that, "the police failed to take any other actions for twenty minutes to diligently investigate their reasonable suspicion of narcotic trafficking, thus, the *Terry* stop was unlawfully prolonged in violation of his Fourth Amendment rights." (R. 36-1 at 16–17.)

Hendricks seems to overlook the fact that the *entire* stop was based on a drug-trafficking investigation. The stop was conducted because of the confidential informant's tip. The only reason for the stop was to further their drug investigation. The fact that the officers allegedly were not actively investigating the scene during the 20-minute time period they waited on the K-9 to arrive is legally irrelevant. As previously stated, the police officers had reasonable suspicion to stop Hendricks. The subsequent 20-minute detention was well within the time period allowable under the law. *See United States v. Johnson*, 267 Fed. Appx. 412, 415 (6th Cir. 2008) (finding a forty-three minute detention after the initial stop a reasonable period); *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (finding a thirty to forty-five minute detention after the initial stop a reasonable period). To this end, the Court properly held that Hendricks' detention was reasonable. (*See* R. 31 at 8.)

### IV.  CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS that the Defendant's Motion for Reconsideration (R. 36) is DENIED. A new trial date will be set by separate order of the Court.

7

This 9th day of February, 2026.



Signed By:

**_Karen K. Caldwell_**

**United States District Judge**